Harlan EDLEMAN, Plaintiff,

v.

Donna SHALALA, Secretary of Health and Human Services, Defendant.

No. 3–93–cv–10116.

United States District Court,
S.D. Iowa,
Davenport Division.

Feb. 18, 1994.

John Bowman, Davenport, IA, for plaintiff.

Richard L. Richards, Asst. U.S. Atty., Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review of the Secretary of Health and Human Services' decision denying him Social Security benefits. Claimant argues he is entitled to disability benefits under Title II of the Social Security Act (Disability Insurance Benefits). Pursuant to 42 U.S.C. § 405(g), this Court may review the final decision of the Secretary.

### I. PROCEDURAL HISTORY

Harlan Edleman applied for Social Security benefits on October 18, 1991, alleging disability since October 1979. He was denied benefits and reconsideration of that decision. Pursuant to a timely request, a hearing was held September 15, 1992, before an Administrative Law Judge (ALJ). The ALJ found the claimant was not under a disability as defined by the Act. On June 25, 1993, the Appeals Council refused the request for review, and the decision of the ALJ is the final decision of the Secretary. This action for review of the Secretary's decision was commenced July 12, 1993.

### II. FINDINGS OF THE SECRETARY

The ALJ found Edleman met the insured status requirements on October 1979 through March 31, 1985, but he did not meet the insured status after that time. Claimant must show he was disabled within the definition of the Act prior to expiration of the insured status, March 31, 1985. *Basinger v. Heckler,* 725 F.2d 1166, 1168 (8th Cir.1984).

According to the ALJ:

The evidence has established a disturbance of mood, as evidenced by a bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. The evidence has also established a depressive disorder characterized by inflexible and maladaptive personality traits causing significant impairment in social or occupational functioning or subjective distress, as evidence by persistent disturbance of mood or affect, and pathological dependence and passivity.

Tr. at 27. In spite of these impairments, the ALJ found the impairments did not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. He found the impairments did not prevent him from performing his past relevant work prior to March 31, 1985, and so was not under a disability as defined in the Social Security Act at any time on or before March 31, 1985.

### III. DISCUSSION OF APPLICABLE LAW AND FACTS

 A court must affirm the decision of the Secretary if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion." *Whitehouse v. Sullivan,* 949 F.2d 1005, 1007 (8th Cir.1991). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992).

 As stated above, the ALJ found Edleman did suffer from a bipolar affective disorder and personality disorder, but the impairment was not severe enough to render him

disabled as defined by the Act. Claimant's allegations regarding the severity of his impairments prior to March 31, 1985, were discredited by the ALJ. For the following reasons, however, substantial evidence on the record as a whole does not support the Secretary's decision.

A. Effect of Medication

First, the ALJ stated that with medication, the claimant's condition improved and was stable. Tr. at 24. Edleman began taking medication for his depression in 1976 when he was prescribed lithium. The lithium was discontinued due to an unrelated surgery. He was then placed on other tricyclics such as Elavil, Imipramine, and Desipramine. In 1979, he was put back on lithium. Tr. at 213. He has also been treated with Thorazine and psychotherapy. Tr. at 215. While he seemed to respond well to lithium, he experienced bad side effects. He did not respond well while on other antidepressants. Tr. at 222.

His treating physicians agree the medication is of value but has not stabilized his condition. For example, Dr. Nils Varney, Staff Neuropsychologist at Veterans Hospital in Iowa City, Iowa, stated in July 1983 "[Edleman] has received treatment for this neurochemical imbalance, but with no successful relief from [depressed mood, insomnia, poor appetite, memory loss, and severe concentration problems."] Tr. at 303. Dr. Steven Chang, one of plaintiff's primary treating physicians stated in 1983 "[Edleman] will need continuous antidepressant medication and possibly need to return to take Lithium Carbonate." Tr. at 310. In August 1983, Dr. Paul Frahm, Ph.D, wrote, "[i]t does appear that he is making only a marginal adjustment in terms of the depression, in spite of the fact that he is receiving antidepressant medication." Tr. at 313.

A finding that medication has stabilized Edleman's condition is not supported by the record.

B. Memory and Concentration

At the administrative hearing, claimant told the ALJ his depression caused him concentration and memory problems. Tr. at 48.

In August 1983, claimant was referred by the Social Security Administration to Dr. Paul Frahm, a psychologist who examined claimant for intellectual functioning. Dr. Frahm found no evidence of major mental deterioration with regard to his intellectual functioning, and in fact claimant's "remote memory function seemed pretty good." Tr. at 313. Based on these statements, the ALJ found Edleman's complaints of memory loss and lack of concentration were exaggerated. Tr. at 24–25.

The ALJ failed to consider the report as a whole, however. The psychologist stated he could not specifically identify what the claimant believed to be his memory problem, "except that [Edleman] said it is possible that in a day or two he might not remember at all what we said in this session. It is possible that the memory deficits he experiences are related to a severe depressive episode." Tr. at 313. Thus, even if the claimant overstated his memory deficiencies, the psychologist acknowledged Edleman had severe depression and was "making only a marginal adjustment in terms of the depression." Tr. at 313. The ALJ found the claimant was not credible as to the extent of his memory and concentration impairments. However, Edleman's disabling condition is his depression rather than his ability to remember and concentrate. While the ability to remember and concentrate are factors to consider in evaluating the claimant's impairments, the ALJ improperly shifted the focus to these impairments and ignored plaintiff's primary disability, his depression.

C. Treating Physician

█ The opinion of the treating physician is entitled to substantial weight, *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir.1993), unless it is unsupported by medically acceptable data. *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir.1991). Dr. Steven Chang, one of plaintiff's treating physicians stated:

Diagnostic impression: Major affective disorder (indigenous depression-unipolar type) depressed in partial remission with antidepressant medication ... He was observed to be deteriorating over the year to the point, he was no longer able to hold any jobs since 1979. He is very sensitive

to any stress and his depression was observed to be worsening since 1979. He will need continuous antidepressant medication and possibly need to return to take Lithium Carbonate. *It is my assessment that he is not able to get or hold gainful employment at this time.*

Tr. at 310, Statement by Dr. Chang in 1983 (emphasis added). The ALJ discounted these statements because "[t]he opinions of this doctor are not reflective of all of the evidence in the record, particularly the evidence of continued improvement after the opinions were given." Tr. at 25.

### 1. History and Prognosis of Illness

The ALJ discounted the statement of the treating physician in part because of Edleman's "continued improvement after the opinions were given." The record shows that Edleman has had recurrent depression since age 14. Tr. at 200. As early as 1975, he had been diagnosed with recurrent depression. At that time Dr. Chang believed the episodes were lasting longer and becoming more severe. Tr. at 200. In 1977, Dr. Chang wrote Edleman's depression appeared to be returning every year, "sometimes requiring hospitalization and sometimes did not." Tr. at 202. He frequently had "depressive symptoms with crying spells, depressive mood, loss of appetite, poor concentration, passing suicidal thought, feeling of worthlessness, and preoccupation of guilt feeling." Tr. at 309.

In August 1979, his stepdaughter committed suicide. This triggered a severe depression which hospitalized the claimant for one and a half months in September 1979. Tr. at 60. He was found to have trouble concentrating on driving because of confusion. He was sleeping poorly, had low energy, was mildly anxious, worried, cried easily, depressed mood, and it affected appropriate speech. Tr. at 210. One year after this hospitalization it was believed that the depression was under reasonable control. Tr. at 243. However, he continued to have depression into 1981. Tr. at 252–58. By August 1983, Edleman had been hospitalized on four occasions for depression. Tr. at 309.

Even after March 31, 1985, plaintiff continued to suffer from depression. He was readmitted to the hospital for recurrent depression in July 1987. Tr. at 339. In April 1990, he was doing well except for poor concentration. Tr. at 359. Six months later the claimant was having increasingly difficulty sleeping, little appetite, and increased social withdrawal. He was also more irritable than usual. Tr. at 362. He was admitted to the hospital again in February 1991 due to acute depression. Tr. at 365–66.

### 2. Lack of Treatment

The ALJ stated Edleman's condition must have been stable because he did not see Dr. Chang after 1979, and the claimant went from July 1983 to August 1985 without needing any medical treatment. Dr. Chang treated Edleman off and on in 1975, 1977, 1978, and 1981 for several months to a year on each occasion. Tr. at 310. His last visit to Dr. Chang was in June of 1991. Tr. at 380. During those times which claimant did not seek treatment from Dr. Chang, it is documented that Edleman did seek treatment from the Veterans Hospital. See e.g. Statements from Dr. Chang, Tr. at 271 (February 1978), 274 (August 1981), 275 (September 1982); 309 (August 1983). Further, a statement in the records from the Veterans Hospital show that Edleman ended his treatments from Dr. Chang for financial reasons. Tr. at 346.

Edleman did not seek psychiatric treatment from 1983 to 1985. During that time he had surgery for an unrelated physical condition in October 1984. Tr. at 314 (Right lower lobe mass and effusion and hematochezia). His treating physician, Dr. Susan Thompson, listed as one of her diagnoses major depressive disorder and noted his poor appetite. Tr. at 314. He returned to the Veterans Hospital in Iowa City for additional surgery in January 1985. Tr. at 320.

The ALJ also stated "[h]ospitalizations are generally conspicuous by their absence, one indication of a lack of severity of mental symptoms." Tr. at 25. This assumption by the ALJ is not supported by the medical evidence. The record discloses that at times claimant's depression was, in fact, worse than when he was hospitalized. For example,

when the claimant was seen in March of 1981 at the Psychiatry Outpatient Clinic at the Veterans Hospital in Iowa City, the nurse noted that Edleman was feeling more depressed than when he was hospitalized in 1979 after his stepdaughter died. Tr. at 254. Dr. Nils Varney, Ph.D., Staff Neuropsychologist at the Veterans Hospital, noted in March of 1983, Edleman "generated an abnormal MMPI profile which indicated significant depression in association with distress reaction and anxiety. *The profile was actually more abnormal than that obtained in 1979, at which time the patient was hospitalized for depression.*" Tr. at 278 (emphasis added).

When considering the record as a whole, gaps in treatment or lack of hospitalization do not establish any stabilization of claimant's depression.

### 3. Continued Improvement

On December 20, 1985, claimant stated he felt "great," had a good appetite, was less irritable, more talkative, and had not felt as good in years. Tr. at 325. Using this statement, the ALJ discredited the statements of both the claimant and his treating physician, Dr. Chang. Tr. at 26 ("he was prescribed medications that worked so well that the claimant stated that he felt great when next seen in December of 1985."). Immediately following the statement that the patient "feels great," the progress notes state, "[h]owever, he still has poor concentration and memory and has had trouble sleeping and some problems sitting still. His neighbors think that he is drunk, as he is so talkative. His wife thinks he is much more talkative, too." Tr. at 325.

On January 9, 1986, the claimant was admitted to Mercy Hospital in Davenport, Iowa, for an acute manic episode. Edleman had been prescribed an antidepressant known as Phenelzine by a doctor at the Veterans Hospital in Iowa City. As directed, he was taking up to seven or eight pills a day. He was taking Phenelzine in December 1985 when he told his physician he was feeling "great."

A review of the entire record reveals the medication was not working well, and, in fact, caused plaintiff to be hospitalized for 11 days. It was improper for the ALJ to discredit plaintiff's testimony of the severity of his impairment based on plaintiff's statement that he was feeling "great" when instead, it was the medication giving plaintiff an unnatural feeling of euphoria.

### 4. Other Physicians

Finally, the ALJ found that Dr. Chang's opinions were not reflective of all the evidence in the record. Tr. at 25. A review of the entire record, however, demonstrates other treating physicians substantiate Dr. Chang's opinions. For example, in September of 1979, Dr. D. Schroeder, M.D., diagnosed Edleman with Depression and cyclothymic personality. "According to [Edleman] he has responded well to lithium before with bad side effects. He has also not done well on antidepressants and side effects have affected his ability to work." Tr. at 222. Dr. Nils Varney, in July of 1983 wrote "Mr. Edleman was diagnosed with both a chronic seizure disorder and major depressive disorder (i.e. neurochemical imbalance resulting in depressed mood, insomnia, poor appetite, memory loss, and severe concentration problems). He has received treatment for this neurochemical imbalance, but with no successful relief from the above mentioned symptoms. In his current condition, it is completely impossible for him to work in any capacity. If this condition continues to prove resistant to treatment, it will render him 100% disabled." Tr. at 303. Finally, in August of 1983, Dr. Paul Frahm, Ph.D., performing the psychological evaluation for Social Security stated "[i]t does appear that he is making only a marginal adjustment in terms of the depression, in spite of the fact that he is receiving antidepressant medication." Tr. at 313.

### 5. Conclusion

Dr. Chang's opinions are supported by the statements from other treating physicians, and should have been given substantial weight. It was error for the ALJ to have discredited the treating physician's opinions. The ALJ's findings are not supported by substantial evidence in the record as a whole.

### D. Hypothetical

■ A hypothetical question must completely describe a claimant's individual disa-

**1342**

bilities. *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir.1986). In his hypothetical to the vocational expert, the ALJ included the following restrictions:

> he'd be moderately limited in his ability to understand and remember detailed instructions and to carry out those detailed instructions. He would also be best employed in a, a simple unskilled type of work activity, and he would be best employed[1] where there would not be significant numbers of coworkers in the immediate work place, although occasional contact could be handled. Also, he should perform no work of a very high stress nature. It would have to be low to moderate stress type of employment only.

Tr. at 75. Given these restrictions, the vocational expert testified the claimant would be able to return to an unskilled janitorial position. Tr. at 75. These restrictions, however, do not accurately reflect plaintiff's condition. "[V]ocational testimony elicited by hypothetical questions that fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence to support the Secretary's decision." *Bradley v. Bowen*, 800 F.2d 760, 763 n. 2 (8th Cir.1986).

Claimant's attorney asked the vocational expert how the following impairments would affect substantial gainful activity:

> moderately limited ability to understand and remember detailed instructions, and moderately limited ability to maintain attention and concentration for extended periods, and a moderately limited ability to complete a normal workday without interruptions from psychologically based symptoms and to perform daily at a consistent pace without an unreasonable number and length of rest periods and a moderately limited ability to get along with coworkers without distracting them, and a moderately limited ability to respond appropriately to changes in the work setting and to set realistic goals, ...

Tr. at 76. These were the restrictions set out by the consultative physician, Dr. Dee

Wright, on January 1992. The vocational expert responded under these conditions, substantial gainful activity would be precluded. Even though these are his current impairments, the evidence shows that he exhibited all of these symptoms prior to his insured status, March 31, 1985.

■ Where a vocational expert has testified a claimant could not perform any work, assuming claimant's complaints were credible, a reviewing court may grant a reversal without remand if it finds the claimant's complaints credible. *Jackson v. Bowen*, 873 F.2d 1111, 1114–15 (8th Cir.1989).

## IV. CONCLUSION

The record demonstrates that plaintiff's impairments render him unable to engage in any substantial gainful activity. Based on the foregoing,

IT IS ORDERED that the decision of the Secretary is reversed. Benefits shall be computed and awarded by the Secretary in accordance with this decision. The Clerk of Court shall immediately enter judgment for plaintiff which triggers the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act).

---

**1.** This hypothetical assumed the individual is capable of employment, the precise conclusion the hypothetical should be trying to elicit.